IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAN TAYLOR, JR.,**                            Case No. 1:18 CV 231

    Petitioner,                              Judge Jeffrey J. Helmick

    v.                                      Magistrate Judge James R. Knepp, II

**WARDEN ED SHELDON,**

    Respondent.                            REPORT AND RECOMMENDATION

## INTRODUCTION

*Pro se* Petitioner Dan Taylor, Jr. ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Ed Sheldon ("Respondent") filed an Answer. (Doc. 5). Petitioner then filed a letter (Doc. 6), to which Respondent filed a response (Doc. 7). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated March 7, 2018). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Fifth District Court of Appeals set forth the following facts on direct appeal:

{¶ 3} On August 29, 2015 around 11:30 p.m., Appellant Dan Taylor, Jr. and his wife M.T. had an argument in the bedroom of the home they shared with M.T.'s father, J.J. in Shelby, Ohio. [T. at 136–140]. According to M.T., the argument arose out of her refusal to drive Appellant to Mansfield to purchase Crack Cocaine. [T. at 183–184]. J.J., a seventy-two (72) year old man with diabetes, went into the bedroom, observed Appellant threatening M.T. with a knife, and attempted to calm Appellant down. [T. at 140–141]. Appellant shoved J.J., causing him to fall into a dresser and cut his arm. *Id.* J.J. left the bedroom and called 911. [T. at 142–143, 182, 185].

{¶ 4} When Appellant saw J.J. calling 911, he punched him in the face and knocked out one of his teeth. Appellant then told J.J. "that's for calling the cops." [T. at 142–143, 334–335]. After punching J.J. in the face, Appellant left before the police arrived. [T. at 145].

{¶ 5} After leaving, Appellant encountered J.J.'s neighbor, Robert Shetler. [T. at 301–303]. Appellant told Mr. Shetler "you're a cracker. Come over and get some of this. I got my peeps coming. It's your fault." [T. at 303].

{¶ 6} Sergeant Bushey, Deputy Berry and Deputy Knee with Richland County Sheriff's Office (RCSO) and Patrolman Hartz with Shelby PD responded to the 911 call. [T. at 178–181, 324–326, 332]. M.T., who had a laceration in her head, informed officers that Appellant had assaulted her and her father. [T. at 182–183, 185]. M.T. also advised officers that Appellant had left the residence, and that he might be hiding in a nearby field. [T. at 182]. J.J. informed officers that Appellant shoved him and subsequently punched him in the face. [T. at 185].

{¶ 7} M.T. completed and signed a written statement and Domestic Violence packet indicating that Appellant struck her with a closed fist, slapped her, pushed her, and threatened her with a knife. [T. at 327–330]. J.J. also completed a written statement describing Appellant shoving him and punching him in the face. [T. at 334–335].

{¶ 8} Dep. Berry recovered a knife from the bedroom Appellant and M.T. shared and observed blood stains on the bed and on the handle of the front door of the house. [T. at 327, 330–332]. Deputies took photographs, which included J.J.'s and M.T.'s injuries, the knife, and the blood stains on the bed and door handle. [T. at 330–334].

{¶ 9} Shelby EMS also responded and treated J.J. and M.T. for their injuries. J.J and M.T. both declined to be taken to the hospital at that time. [T. at 336]. Officers were unable to locate Appellant and left the scene around 12:45 am on August 30, 2015. [T at. 306].

{¶ 10} At approximately 1:30 a.m. on August 30, 2015, Appellant returned to the house. [T. at 147–150, 186]. J.J. asked Appellant to leave and when he refused, J.J. grabbed his .12 gauge pump shotgun and fired a "warning shot" into the ground.

*Id.* Appellant ignored J.J.'s warnings, walked inside the house, and went into the bedroom with M.T.. *Id.* Appellant punched M.T. in the face, on the opposite side from her earlier laceration, and ordered her to lay in bed with him. [T. at 345–346].

{¶ 11} Mr. Shetler, his roommate Lynn Moon, and his friend Don McCoy heard the gunshot and called 911. [T. at 305–307, 315–318]. They also went over to the house, whereby Mr. Moon took possession of J.J.'s shotgun, unloaded it and placed it on Mr. Shetler's back porch. [T. at 317–319]. Officers with RCSO, Shelby Police Department, Plymouth Police Department and the Ohio State Highway Patrol, along with Shelby EMS, responded to the scene. [Tr. 186–187, 287–288, 340]. Sgt. Bushey seized J.J.'s shotgun and submitted it to RCSO. [Tr.188]. Officers then set up a perimeter around the property to prevent Appellant from leaving the residence. [T. at 189–191, 340]. Dep. Berry looked through the bedroom window and observed Appellant and M.T. lying in bed together. [T. at 191, 341]. Dep. Berry identified himself and ordered Appellant to show his hands. [T. at 342]. Once Dep. Berry had clear view of Appellant's hands, he ordered other officers to enter the residence. Appellant was thereafter arrested without incident. [T. at 191–192, 289–290, 342].

{¶ 12} As Dep. Berry escorted Appellant to his patrol car, Appellant stated "I'll beat this one like I beat the last seven." [T. at 343]. A subsequent search of Appellant's criminal history revealed multiple prior arrests and convictions for Domestic Violence. [T. at 344–345].

{¶ 13} Following Appellant's arrest, Shelby EMS transported J.J. and M.T. to Shelby Hospital for treatment. [T.at 151–153, 231–232, 244]. While at Shelby Hospital, M.T. advised Nurse Natasha Rinehart that Appellant hit her in the head with a beer bottle. [T. at 231–232]. Doctors treated M.T. for the laceration on the right side of her head, swelling on the left side of her head, bruising on her neck, bruising and swelling on her left index finger, and a possible concussion. [T. at 232].

{¶ 14} J.J. advised Nurse Jill Wheeler that Appellant shoved him and punched him in the face. [T. at 247]. Doctors treated J.J. for a cut to his lip, the missing tooth and the laceration to his arm. [T. at 244–247].

{¶ 15} On September 1, 2015, Appellant called M.T. from the jail and asked her to lie about the cause of her injuries. [T. at 216–220].

{¶ 16} On September 3, 2015, Sgt. Henderson with RCSO met with M.T. and photographed her injuries prior to Appellant's preliminary hearing in Mansfield Municipal Court. [T. at 290–291].

{¶ 17} On October 15, 2015, the Richland County Grand Jury indicted Appellant Dan Taylor, Jr. on three (3) counts stemming from the events of August 30, 2015. Counts 1 and 2 of the indictment charged Appellant with Domestic Violence

against his wife and father-in-law, a third degree felony pursuant to R.C. 2919.25(A) based on Appellant's prior convictions for Domestic Violence. Count 3 of the indictment charged Appellant with Felonious Assault against his father-in-law, a second-degree felony pursuant to R.C. 2903.11(A)(1).

{¶ 18} On October 16, 2015, Appellant filed a *pro se* "Motion for Speedy Trial" with the Trial Court. The trial court never ruled upon Appellant's "Motion for Speedy Trial."

{¶ 19} During his arraignment on October 17, 2015, Appellant pled not guilty to the indictment. The trial court scheduled a Prosecutor Pretrial for November 10, 2015 and ordered Appellant to not have contact with M.T. or J.J.

{¶ 20} On October 28, 2015, Appellant filed a "Demand for Discovery."

{¶ 21} On November 2, 2015, the trial court scheduled Appellant's jury trial for November 19, 2015.

{¶ 22} On November 3, 2015, Appellant filed a "Motion for Continuance of Trial."

{¶ 23} On September 19 and November 14, 2015, M.T. violated the no-contact orders imposed by Mansfield Municipal Court and the trial court by visiting Appellant in Richland County Jail. [T. at 215]. M.T. signed in under a different name when she visited Appellant. [T. at 215, 217].

{¶ 24} On November 18, 2015, the trial court granted Appellant's "Motion for Continuance of Trial" and continued Appellant's trial until January 7, 2016.

{¶ 25} On November 19, 2015, the trial court scheduled a Final Pretrial for December 28, 2015.

{¶ 26} On January 5, 2016, Appellant, while represented by trial counsel, filed a *pro se* "Motion to Discharge" asking the trial court to dismiss the indictment based on the State violating his speedy trial rights.

{¶ 27} On January 7, 2016, the trial court continued Appellant's jury trial to February 11, 2016, due to Richland C.P. No.2015–CR–324 proceeding to trial.

{¶ 28} On January 28, 2016, the State filed a "Response to Defendant's Motion to Dismiss."

{¶ 29} On February 9, 2016, the trial court overruled Appellant's "Motion to Discharge" finding that only 160 out of the permitted 270 days had elapsed, as Appellant's "Demand for Discovery" on October 28, 2015, Appellant's "Motion for Continuance of Trial" on November 3, and the trial court's continuance from February 11, 2016, all tolled Appellant's speedy trial time. *Id.*

4

{¶ 30} On February 11, 2016, Appellant's case proceeded to jury trial. During trial, the State presented testimony from nine (9) witnesses and introduced twenty (20) exhibits. [Tr. 261–263]. The trial court allowed the State to treat M.T. as a court's witness after she provided testimony contradicting her prior statements to police and medical personnel and admitted that she was protecting Appellant. [T. at 203–210].

{¶ 31} On February 12, 2016, the jury found Appellant guilty on all three (3) counts of the indictment. Following the verdict, the trial court scheduled sentencing for February 17, 2015.

{¶ 32} On February 17, 2015, the trial court sentenced Appellant to prison terms of three (3) years on Counts 1 and 2 and eight (8) years on Count 3. The trial court ordered that Appellant's sentences on Counts 1 and 3 run consecutively to each other and concurrently with Count 2, for a total prison term of eleven (11) years. The trial court also imposed three (3) years of mandatory post-release control.

{¶ 33} On February 19, 2016, the trial court issued an order granting Appellant 169 days of jail time credit.

Ex. 21, Doc. 5-1, at 82-87; *State v. Taylor*, 2016 WL 5118653, at *1-4 (Ohio Ct. App.).

## PROCEDURAL HISTORY

Ohio State Court Conviction

In October 2015, a Richland County, Ohio grand jury indicted Petitioner on two counts of domestic violence in violation of Ohio Revised Code § 2919.25(A), and one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1). (Ex. 1, Doc. 5-1, at 3-5). Petitioner, through counsel, entered a plea of not guilty at arraignment. (Ex. 2, Doc. 5-1, at 6).

The day after his indictment, Petitioner filed a *pro se* motion for speedy trial. (Ex. 3, Doc. 5-1, at 7). Through counsel, Petitioner also filed a demand for discovery (Ex. 4, Doc. 5-1, at 8), and a motion for continuance (Ex. 5, Doc. 5-1, at 9). The trial court granted the continuance. (Ex. 6, Doc. 5-1, at 11). Petitioner subsequently filed two *pro se* motions to discharge, alleging speedy trial violations. (Exs. 7-8, Doc. 5-1, at 12-23). The trial court then ordered Petitioner's trial continued due to conflict with another case and noted the speedy trial time was tolled. (Ex. 9, Doc.

5-1, at 24). The state filed a response to one of Petitioner's motions to discharge (Ex. 10, Doc. 5-1, at 25-28), and the trial court subsequently denied Petitioner's second motion to discharge, finding no speedy trial violation (Ex. 11, Doc. 5-1, at 29-30). After the trial court's ruling, Petitioner filed a *pro se* reply to the state's response. (Ex. 12, Doc. 5-1, at 31).

The case proceeded to jury trial on February 11, 2016 (trial transcripts, Doc. 5-2, at 1-502), and on February 12, 2016, the jury found Petitioner guilty on all counts (Ex. 13, Doc. 5-1, at 35-36). The trial court sentenced Petitioner to three years in prison on each domestic violence conviction (to be served concurrently), and eight years on the felonious assault conviction (to be served consecutively), for an aggregate prison sentence of eleven years. (Ex. 14, Doc. 5-1, at 37-39); *see also* Doc. 5-2, at 502-17 (sentencing transcript). The trial court then appointed Petitioner counsel for his direct appeal. (Ex. 15, Doc. 5-1, at 40).

Direct Appeal

Petitioner, through counsel, filed a timely notice of appeal to Ohio's Fifth District Court of Appeals. (Ex. 16, Doc. 5-1, at 7). He raised two assignments of error in his merit brief:

1. The trial court erred by overruling Defendant's motion to discharge because he was not brought to trial within the time required by Sections 2945.71 and 2945.72 of the Revised Code.

2. The trial court erred by failing to merge the convictions for felonious assault and domestic violence of Ohio merger law and Mr. Taylor's rights to due process and against being subjected to double jeopardy.

(Ex. 17, Doc. 5-1, at 42-58). The state filed a brief in response. (Ex. 18, Doc. 5-1, at 59-75). Petitioner then filed a *pro se* motion to disqualify his appellate counsel. (Ex. 19, Doc. 5-1, at 76-79). The appellate court denied the motion, noting that "[a]ny alleged deficiencies in counsel's representation of Appellant can be addressed by an appropriate motion under App.R. 26(B) in the event Appellant's conviction and sentence are affirmed." (Ex. 20, Doc. 5-1, at 80). On September

21, 2016, the appellate court affirmed Petitioner's convictions and sentences. (Ex. 21, Doc. 5-1, at 81-96); *Taylor*, 2016 WL 5118653. Petitioner did not appeal this decision to the Ohio Supreme Court.

Application for Reopening

On December 5, 2016, Petitioner filed a timely *pro se* Ohio Appellate Rule 26(B) application to reopen his direct appeal. (Ex. 22, Doc. 5-1, at 97-107). In it, he alleged his appellate counsel was constitutionally ineffective for not raising four claims on direct appeal:

1.  Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution, by failing to raise the issue of Eighth Amendment violations and Article I, Section 9 of the Ohio Constitution; "There shall be no excessive bail or cruel and unusual punishment" and "That all persons shall be bailable by sufficient surities [sic]."

2.  Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution. By failing to raise the issue of violating appellant's First Amendment and Article I, Section 7 Constitutional rights by not challenging the Prosecutorial Misconduct "All men have an indefensible right to worship Almighty God according to the dictates of their own conscience . . . " and ". . . Nor shall any person be incompetent to be a witness on account of his religious belief."

3.  Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution by failing to challenge Criminal Rule 16, "the Appearance of Evidence" pertaining to the charges of Felonious Assault and Domestic Violence violating the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution, that of due process.

4.  Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution by negating to present full proof of his R.C. § 2945.71 violation of the Ohio Revised Code: that of a Speedy Trial.

*Id.* at 101, 102, 104, 105. Petitioner also filed an affidavit and exhibits in support of his application for reopening. (Ex. 23, Doc. 5-1, at 108-68). The state filed a memorandum in opposition. (Ex. 24,

Doc. 5-1, at 169). On January 26, 2017, the appellate court denied Petitioner's application for reopening. (Ex. 25, Doc. 5-1, at 179-81). Petitioner did not file a timely appeal of this decision.[1]

## FEDERAL HABEAS CORPUS

On January 22, 2018[2], Petitioner filed a Petition seeking a writ of habeas corpus with this Court. (Doc. 1). In it, he raises the following five grounds for relief:

**GROUND ONE:** Petitioner was denied "the right of access to claim and the courts" when the Ohio Supreme Court Clerk's office failed to timely file his Memorandum Asking for Jurisdiction; Violating his Fourteenth Amendment of the United States Constitution.

**GROUND TWO:** Petitioner was denied "effective assistance" of counsel . . . guaranteed by the Sixth Amendment of the United States Constitution when counsel negated to use any errors that could be found in trial record which were stronger th[a]n the ones presented on direct appeal, and deliberately falsifying information to give his client an unfair outcome.

**GROUND THREE:** Petitioner['s] Sixth Amendment right to the United States Constitution were violated when appellate counsel negated to inspect the legality of the proper procedure of charging a criminal defendant with domestic violence and felonious assault with in the Rule 16 Discovery.

**GROUND FOUR:** Petitioner['s] Sixth Amendment of the United States Constitution was violated when appellate counsel did not address the state prosecutor['s] violation of his client's First Amendment right when questioned on his religion and oath taking.

**GROUND FIVE:** Petitioner was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution when counsel failed to raise the due process violation of excessive bail and cruel and unusual punishment

---

1. Petitioner's unsuccessful attempt to appeal this decision, as it relates to cause to excuse default, will be discussed in detail below.

2. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 13 (representing Petition was placed in the prison mailing system on January 22, 2018).

that's guaranteed by the Eighth Amendment of the United States Constitution which can be found in the trial record and preliminary hearing.

(Doc. 1, at 5, 6, 8, 9; Doc. 1-1, at 24) (capitalization altered). Petitioner also filed a memorandum in support (Doc. 1-1) and exhibits (Docs. 1-3 to 1-16). Respondent filed an Answer (Doc. 5), with attached state court record (Doc. 5-1) and transcripts (Doc. 5-2). Petitioner then filed a letter to the Court (Doc. 6), to which Respondent filed a response (Doc. 7).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

DISCUSSION

Respondent contends Petitioner's first claim is non-cognizable and his remaining grounds are procedurally defaulted. Read liberally, as a *pro se* Petition must be, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985), Petitioner seems to assert a mail delay as cause to overcome the procedural default. For the reasons discussed below, the undersigned recommends the Petition be denied in its entirety.

Ground One

In Ground One, Petitioner asserts he was denied his right of access to the courts due to a delay between his presenting his appeal of his 26(B) application and the Ohio Supreme Court clerk's office filing that appeal.

Habeas corpus is available to prisoners seeking relief from unlawful imprisonment or custody. *Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004). State prisoners may file a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 to challenge the fact of their convictions or the duration of their sentences. However, § 2254 is not available to review questions unrelated to the cause of detention. *Martin,* 391 F.3d at 714.

Petitioner's first ground for relief relates to the conditions of his confinement. He objects to the fact that the prison did not deliver his legal mail and/or the Ohio Supreme Court did not file it in a timely manner. He also complains that the Ohio Supreme Court did not apply the federal

"mail box rule." This claim does not challenge his conviction or his sentence. It is therefore not properly asserted in this habeas petition. The undersigned recommends the court find this claim non-cognizable.

Grounds Two through Five

In Grounds Two through Five, Petitioner asserts he was denied effective assistance of appellate counsel. He specifically argues counsel was ineffective for: 1) not raising the strongest issues and misrepresenting the record on appeal (Ground Two); 2) failing to raise an argument about grand jury proceedings and Criminal Rule 16 discovery (Ground Three); 3) failing to raise an argument about the First Amendment / prosecutorial misconduct issue based on the prosecutor's questions about religion (Ground Four); and 4) failing to raise an argument about the Eighth Amendment and excessive bail (Ground Five). *See* Doc. 1, at 6-9; Doc. 1-1, at 9-24. Respondent asserts these grounds are procedurally defaulted. See Doc. 5, at 24-31. For the reasons discussed below, the undersigned recommends the Court find these grounds defaulted.

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The doctrine of exhaustion "requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also Williams v. Wolfenberger*, 513 F. App'x 466, 68 (6th Cir. 2013) ("To satisfy this requirement, the petitioner must argue his claim under the same legal theory that was presented to the state courts.").

11

A procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan,* 526 U.S. at 842; *Anderson v. Harless,* 459 U.S. 4 (1982). In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims, on the record, to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal. *Caver v. Straub,* 349 F.3d. 340, 346 (6th Cir. 2003) (quoting *O'Sullivan,* 526 U.S. at 845). This is to "[alert] [the state court] to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before seeking habeas relief. *Whitings v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, "a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts." *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Further, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

If the state argues a petitioner has procedurally defaulted his claims, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4.  Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).[3]

To the state appellate court in his application for reopening, Petitioner alleged his appellate counsel was constitutionally ineffective for failing to raise (or effectively raise) on direct appeal: 1) an Eighth Amendment issue regarding excessive bail; 2) a First Amendment / prosecutorial misconduct issue based on the prosecutor's questions about religion; 3) an argument about grand jury proceedings and an Ohio Criminal Rule 16 discovery issue; and 4) an Ohio Revised Code § 2945.71 speedy trial issue. (Ex. 22, Doc. 5-1, at 101-07).

---

3. A petitioner may also overcome a procedural default by demonstrating that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.'" *McCleskey v. Zant,* 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 492-93 (1976)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). Petitioner has presented no such evidence or argument.

First, to the extent Petitioner now attempts to raise ineffective assistance of appellate counsel on a *different* factual basis than those presented to the state appellate court, such claims are procedurally defaulted. In Ground Two, Petitioner asserts his appellate counsel was ineffective when he "negated to use any errors that could be found in the trial record which were stronger than the ones presented on direct appeal, and deliberately falsifying information to give his client an unfair outcome." (Doc. 1, at 6). An ineffective assistance of appellate counsel claim regarding falsifying information was not properly presented to the state court. *See* Ex. 22, Doc. 5-1, at 97-107.[4] As such, it is procedurally defaulted and may not be raised here. *See Whitings*, 395 F.3d at 612. To the extent Ground Two also partially argues that counsel failed to raise the other stronger issues as presented to the state court, those are addressed below.

Second, as to the ineffective assistance of appellate counsel claims that were raised to the state court—now raised in Grounds Three through Five—the appellate court denied the application. (Ex. 25, Doc. 5-1, at 179-81). Petitioner did not file a timely appeal of that decision. No avenue remains open for Petitioner to do so, as the Ohio Supreme Court does not permit delayed appeals of Appellate Rule 26(B) applications. *See* Ohio S. Ct. Prac. R. 7.01(A)(4)(c). Thus, these claims are procedurally defaulted and may not be considered on habeas review unless Petitioner can show cause and prejudice to overcome the default.

*Cause and Prejudice*

In his argument about Ground One (denial of access to the courts), Petitioner asserts he "believes he has demonstrates the []cause[] and []prejudice[] through the exhibits presented."

---

4. Petitioner attempted to raise a similar issue in his motion to disqualify appellate counsel. *See* Ex. 19, Doc. 5-1 at 76-79. However, the appellate court denied his motion and instructed Petitioner to raise any claims about appellate counsel's performance in a 26(B) application. (Ex. 20, Doc. 5-1, at 80). Petitioner did not include this claim in his 26(B) application. *See* Ex. 22, Doc. 5-1, at 97-107.

(Doc. 1-1, at 8). The undersigned interprets this as an argument that the mail delays should excuse Petitioner's default.

First, this assertion of cause does not address the portion of Ground Two, noted above. This is so because that claim—asserting misrepresentation or falsification of the record—was defaulted when Petitioner failed to raise it to the Ohio appellate court, a filing unaffected by the alleged mail delay. Petitioner cannot assert ineffective assistance of counsel to overcome this default as he proceeded *pro se* (and further—he had no right to counsel in his 26(B) post-conviction proceeding). *See, e.g., Williams v. Bagley*, 166 F. App'x 176, 180 (6th Cir. 2006) (no right to counsel in 26(B) application). Nor can he rely on his *pro se* status as cause. *See Bonilla*, 370 F.3d at 498. Therefore, the undersigned recommends the court find that portion of Ground Two defaulted, and turns to whether the asserted mail delay may provide cause and prejudice to overcome his default of the remainder of Ground Two, and Grounds Three through Five.

Petitioner asserts he attempted to file an appeal of his 26(B) denial with the Ohio Supreme Court but delays in the prison mail system and/or the Ohio Supreme Court filing system prevented him from doing so.

Preliminarily, Petitioner relies heavily on the *federal* prison mailbox rule and asks this court to apply it to his attempt to appeal to the Ohio Supreme Court. *See* Doc. 1-1, at 6-8. Pursuant to that rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d at 1132 (citing *Houston*, 487 U.S. at 270). However, Ohio does not recognize the prison mailbox rule. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011) (noting that under Ohio's procedural rules, a document is not deemed filed until the clerk of court's office files the document); *see also Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003) (noting the "prison mailbox rule" established by *Houston*

*v. Lack* is not binding on state courts, in this case Michigan). However, although the mailbox rule does not apply, the Sixth Circuit has explained that "[w]here a *pro se* prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events", that circumstance "is sufficient to excuse a procedural default based upon a late filing." *Maples*, 340 F.3d at 439; *see also Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (finding cause based on *Maples* where Petitioner presented his application to prison officials five days prior to the deadline).

The Ohio appellate court denied Petitioner's 26(B) application on January 26, 2017. Thus, pursuant to the Rules of Practice of the Supreme Court of Ohio, Petitioner's appeal was due by March 13, 2017. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i). Petitioner attached to his Petition the first page of a Memorandum in Support of Jurisdiction file stamped by the Ohio Supreme Court Clerk on March 14, 2017 (that day after it was due). (Doc. 1-16, at 1).[5] He also attached withdrawal slips from his prison account for postage dated March 5, 2017, and marked "paid" on March 7, 2017 for mail to the Clerk of the Supreme Court and the Richland County Assistant Prosecutor. (Doc. 1-16, at 2-3). Respondent makes no reference to these exhibits or address any mail delay as cause, but rather asserts that neither Petitioner's *pro se* status, nor ineffective assistance of counsel can serve as cause for the default. (Doc. 5, at 25-26). The undersigned finds Petitioner has shown cause to excuse the default based on his showing that he submitted a request for postage eight days before his appeal was due, and postage was paid just six days prior. Thus, Petitioner presented his

---

5. Rule 7 of the Rules Governing Section 2254 Cases permits expansion of the record with "additional materials relating to the petition." Although a habeas court is generally "limited to the record that was before the state court that adjudicated the claim on the merits", *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011), Petitioner's attached documents are relevant to his assertion of cause to overcome default. Moreover, nowhere has Respondent objected to consideration of these documents. Therefore, the undersigned grants a limited expansion of the record to include the documents attached to the Petition that are referenced herein.

documents to prison officials "in sufficient time for [them] to arrive timely in the normal course of events", *Maples*, 340 F.3d at 439, and as such, his procedural default may be excused.

To overcome a procedural default, Petitioner must also show actual prejudice. For the reasons discussed below in assessing Petitioner's underlying ineffective assistance of counsel claims, the undersigned finds he cannot do so.

Ineffective Assistance of Appellate Counsel

On an appeal of right, a criminal defendant is entitled to effective assistance of appellate counsel. *Mahdi v. Bagley,* 522 F.3d 631, 636 (6th Cir. 2008). Claims of ineffective assistance of appellate counsel are subject to the test established by *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to show both deficient performance and resulting prejudice. *Id.* To meet his burden, "a petitioner must show that the performance of counsel fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burton v. Renico,* 391 F.3d 764, 773 (6th Cir. 2004) (internal quotation marks omitted); *see also Maples,* 340 F.3d at 437. When evaluating the issue of ineffective assistance of appellate counsel, courts review the appellate proceedings to determine whether prejudice is shown. *Mapes v. Tate,* 388 F.3d 187, 194 (6th Cir. 2004) (noting that prejudice is shown if "there is 'a reasonable probability that, but for his counsel's [failings] ..., [the defendant] would have prevailed on his appeal'") (alterations in original) (quoting *Smith v. Robbins,* 528 U.S. 259, 285 (2000)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burton,* 391 F.3d at 773 (internal quotation marks omitted); *Maples,* 340 F.3d at 437. Under *Strickland*, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[T]his is a deferential standard

that is challenging for a claimant to meet." *Kelly*, 846 F.3d at 831. An attorney is not required to present meritless claims, *see Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013), and appellate counsel need not raise every non-frivolous claim in order to provide effective assistance, *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011). The failure to raise an issue on appeal constitutes ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the outcome of the appeal. *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). To show ineffective assistance when appellate counsel presents one argument instead of another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver*, 349 F.3d at 348 (quoting *Smith*, 528 U.S. at 288).

Where a state habeas petitioner's claims are subject to AEDPA, *Strickland*'s deferential standard "is raised even higher, as the petitioner must show that the state court's application of *Strickland* was itself unreasonable." *Id.* at 832. This amounts to a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks omitted). Stated differently, AEDPA mandates that the court "take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotation marks omitted).

Here, the state appellate court considered and rejected Petitioner's allegations of ineffective assistance of appellate counsel. (Ex. 25, Doc. 5-1, at 179-81). Therein, the court cited the *Strickland* standard and concluded: "Upon review of Appellant's arguments as to each of these alleged failure[s] of appellate counsel, we find no evidence that Appellant's counsel was ineffective or that his representation was deficient in failing to present such arguments." (Ex. 25, Doc. 5-1, at 181).In *Joseph v. Coyle*, the Sixth Circuit stated: "Although [the petitioner] must

18

satisfy the AEDPA standard with respect to his independent IAC claim, he need not do so to claim ineffective assistance for the purpose of establishing cause." 469 F.3d 441, 459 (6th Cir. 2006); *see also Goldberg v. Maloney,* 692 F.3d 534, 537 (6th Cir. 2012); *Hall v. Vasbinder,* 563 F.3d 222, 236–37 (6th Cir. 2009). As another court recently explained, however:

> Although *Joseph v. Coyle, supra,* does contain the quoted language, it is difficult to reconcile with *Harrington v. Richter,* 562 U.S. ——, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011), which requires habeas courts to give AEDPA deference to state court decisions on the merits and count as merit decisions even silent state court decisions when the federal constitutional question is squarely presented to them, as Leonard's ineffective assistance of appellate counsel claim was here.

*Leonard v. Warden, Ohio State Penitentiary*, 2014 WL 2207195, at *7 (S.D. Ohio), *report and recommendation adopted by* 2015 WL 2341094. Regardless of whether the standard of review is with AEDPA deference or *de novo*, the undersigned finds Petitioner's cannot make the necessary showing of prejudice to overcome the default of his grounds for relief.

In Ground Two, Petitioner asserts, *inter alia*, his appellate counsel was ineffective when he "negated to use any errors that could be found in the trial record which were stronger than the ones presented on direct appeal". (Doc. 1, at 6). Petitioner's specific arguments regarding the erroneous omission of issues are discussed below in Grounds Three through Five.

In Ground Three, Petitioner argues his appellate counsel was ineffective for failing to raise a challenge to the grand jury process and alleged violations of a discovery rule. *See* Doc. 1, at 8, Doc. 1-1, at 13-16. Specifically, he contends there was error resulting from the second victim not testifying before the grand jury and in the state's failure to provide him discovery in the form of a domestic violence packet from the second victim.

With respect to grand juries, the Sixth Circuit has explained:

In *Russell,* the Supreme Court put forth the criteria by which the sufficiency of an indictment is to be measured:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, " 'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." '

369 U.S. at 763-64, 82 S.Ct. 1038. Thus, an indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy.[1] While the federal right to a grand jury indictment has never been found to be incorporated against the states, *see Hurtado v. California,* 110 U.S. 516, 534-35, 4 S.Ct. 111, 28 L.Ed. 232 (1884), courts have found that the due process rights enunciated in *Russell* are required not only in federal indictments but also in state criminal charges. *See De Vonish v. Keane,* 19 F.3d 107, 108 (2d Cir. 1994); *Fawcett v. Bablitch,* 962 F.2d 617, 618 (7th Cir. 1992); *see also Isaac v. Grider,* 2000 WL 571959, at *4 (6th Cir. 2000); *Parks v. Hargett,* 1999 WL 157431, at *3 (10th Cir. 1999).

*Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005). Here, Petitioner has not shown insufficient notice of the charges or that the grand jury indictment is insufficient to protect him against double jeopardy. Further, even "assuming that the prosecutor did violate Ohio Crim. R. 16, such a claim is not cognizable on habeas, because it is not a constitutional violation." *Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir. 2002); *accord Hicks v. Collins,* 384 F.3d 204, 220 (6th Cir. 2004) ("To the extent Hicks premises his argument upon Ohio Criminal Rule 16(b)(1)(a)(ii), there is no constitutional violation cognizable on habeas."). Second, there is considerable case law standing for the proposition that there is no constitutional right to discovery in a criminal case. The Supreme Court has observed that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977); *Warlick v. Romanowski,* 367 F. App'x 634, 643 (6th Cir. 2010) ("It is well-settled that there is no general constitutional right to discovery in a criminal case."). Therefore, the undersigned recommends the court find Petitioner's appellate counsel was not ineffective for failing to raise such an issue on direct appeal.

20

In Ground Four, Petitioner contends appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim related to the prosecutor's line of questioning about his religion. *See* Doc. 1, at 9; Doc. 1-1, at 17-20. The Supreme Court held in *Darden v. Wainwright* that the relevant question for prosecutorial misconduct is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Moreover, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise." *Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006) (internal quotation marks and alterations omitted). Indeed, because "the *Darden* standard is a very general one," courts have "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker v. Matthews,* 567 U.S. 37, 48 (2012) (internal quotation marks omitted); *see also Key v. Rapelje*, 634 F. App'x 141, 146 (6th Cir. 2015). Petitioner objects to several questions asked by the prosecutor about his religion. Even if these questions were improper, they were brief, and there was overwhelming evidence of guilt submitted at trial in the form of testimony from the victims, law enforcement officers, and medical personnel. *Taylor*, 2016 WL 5118653, at *1-2. Therefore, the undersigned finds the prosecutor's comments did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. As such, Petitioner has not shown counsel was ineffective for failing to raise this argument on direct appeal.

In Ground Five, Petitioner contends appellate counsel was ineffective for failing to raise a claim about excessive bail. *See* Doc. 1-1, at 20-24. But a claim regarding pre-trial bail/bond becomes moot upon conviction. *See Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982); *accord U.S. v.*

*Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004). As such, counsel was not ineffective for failure to raise such a claim on direct appeal.

Based on the foregoing, whether the standard of review is *de novo* or AEDPA deference, Petitioner's ineffective assistance of counsel claims fail. Counsel is not required to raise meritless claims. *Coley*, 706 F.3d at 752. And Petitioner has not shown counsel failed to present issues that were "clearly stronger" than those presented. *Smith*, 528 U.S. at 289. Because Petitioner cannot show counsel's performance was deficient, he necessarily cannot show prejudice from counsel's failure to raise these issues. That is, he cannot show "there is 'a reasonable probability that, but for his counsel's [failings] ..., [the defendant] would have prevailed on his appeal'[.]" *Mapes,* 388 F.3d at 194 (quoting *Smith,* 528 U.S. at 285).

Because Petitioner cannot show prejudice resulting from the underlying ineffective assistance of appellate counsel claim, he also cannot show prejudice to overcome his procedural default of these claims. *See Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009) ("The prejudice analysis for . . . procedural default and the prejudice analysis for the ineffective assistance of counsel argument are sufficiently similar to treat as the same in this context"). As such, the undersigned recommends the court find Petitioner's ineffective assistance of appellate counsel claims (Grounds Two through Five) procedurally defaulted.

Letter

In a letter to the district judge dated June 26, 2018, Petitioner asserts that his case had been dropped, and a release order issued by the Ohio Supreme Court, yet he has not been released. *See* Doc. 6. He did not attach a copy of such an order. Respondent filed a response, arguing that Petitioner's filing was not permitted by the rules and should be stricken from the record. (Doc. 7).

Further, Respondent asserted Petitioner's filing was frivolous as the claims made therein were not supported by the electronic docket in Petitioner's state court case. *Id.*

The undersigned has reviewed the docket in Petitioner's state court case, Case No. 2015 CR 777 (Richland County, Ohio), and found no indication of any release order. *See* https://richlandcourtsoh.us/eservices/home.page.2. Nor has the undersigned found such an order in this federal habeas case. As such, the undersigned recommends the court find Petitioner has not shown entitlement to relief based on his letter.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be denied. Ground One is non-cognizable, and Grounds Two through Five are procedurally defaulted.


s/James R. Knepp, II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).